UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENRY PICAULT,
                        Plaintiff,

-v-

WORLD BUSINESS LENDERS,
                        Defendant.

16-CV-3682 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

This is an employment discrimination case. *Pro se* Plaintiff Henry Picault, who is Haitian-American, claims that Defendant World Business Lenders, his former employer, discriminated against him on the basis of his national origin. Defendant moves for summary judgment. For the reasons that follow, the motion is granted.

**I.    Background**

Defendant World Business Lenders ("WBL") makes small business loans to companies around the world. Plaintiff Henry Picault worked as a salesperson for WBL for five months in 2015. Picault claims that WBL discriminated against him, in violation of Title VII of the Civil Rights Act of 1964, based on the following events.

First, Picault was given a written warning for unsatisfactory job performance because he did not meet WBL's requirement of closing $50,000 in loans each month. (Dkt. No. 58 at ¶ 36–37.) Picault claims that WBL selectively enforced this requirement. (Dkt No. 66 ¶ 20.)

Second, Picault received another warning that he was not meeting WBL's requirement of making 100 sales calls per day. Picault likewise claims that this requirement was selectively enforced. (Dkt No. 66 ¶ 20.)

Third, Picault claims that his supervisor, Dario Rodriguez, impeded Picault's attempt to close a potentially lucrative loan because Rodriguez wanted to take credit for the loan himself. (*See, e.g.*, Dkt. No. 2 at 9.)

Fourth, after that deal fell through, another manager, Kurtis Miller, said to Picault: "What is it, you using Haitian voodoo on these people?" (Dkt. No. 60-4 at 164.)

Finally, right when Picault began working on another potentially lucrative new client, he was fired. Picault claims that WBL fired him to avoid paying him any commissions.

WBL filed this motion for summary judgment. Picault filed an opposing Rule 56.1 statement, but did not file a brief.

## II. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden to provide evidence on each material element of his claim or defense. *See Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). The non-moving party must then respond with specific facts demonstrating that there are remaining issues for trial. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (quoting *Lunds, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)) (internal quotation marks omitted).

When, as here, a litigant is proceeding *pro se*, courts construe that litigant's filings liberally and read them to raise the strongest arguments they suggest. *See Burgos v. Hopkins*, 14

F.3d 787, 790 (2d Cir.1994). The rule favoring liberal construction of *pro se* submissions is especially applicable to civil rights claims. *See Cruz v. Midwood Ambulance & Oxygen Serv., Inc.*, 136 F. App'x 414, 415 (2d Cir. 2005). Nevertheless, mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

### III. Discussion

Picault's suit has one major problem: he does not provide any evidence that WBL's actions had anything to do with his Haitian national origin. It is not enough that WBL may have treated Picault unfairly; at the end of the day, Picault must provide evidence supporting a reasonable inference that the unfair treatment was linked to his national origin. There is simply not enough evidence for a reasonable juror to find for Picault.

#### A. The *McDonnell Douglas* Framework

This case is governed by the three-step framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must make a *prima facie* showing of discrimination by showing (1) that he belonged to a protected class; (2) that his job performance was satisfactory; (3) that he was subject to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. *See Wolf v. New York City Dep't of Educ.*, 421 F. App'x 8, 10 (2d Cir. 2011). If the plaintiff fails to make this initial showing, the suit fails.

If the plaintiff makes a *prima facie* case, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the plaintiff's termination. *Id.* If the defendant successfully makes such a showing, then the burden shifts back to the plaintiff to show that the defendant's nondiscriminatory reasons were pretextual. *Id.* "Conclusory allegations of discrimination are insufficient to show that a defendant's non-discriminatory reasons are pretexts

3

and avoid summary judgment." *Trane v. Northrop Grumman Corp.*, 94 F. Supp. 3d 367, 375 (E.D.N.Y. 2015) (collecting cases), *aff'd*, 639 F. App'x 50 (2d Cir. 2016).

B.     **Picault's *Prima Facie* Showing**

Picault has failed to make his initial showing of discrimination. Specifically, he has failed to show that his job performance was satisfactory, and, more importantly, he has failed to show that the circumstances surrounding his firing give rise to an inference of national-origin discrimination.

As discussed above, Picault must satisfy his initial burden by showing (1) that he belonged to a protected class; (2) that his job performance was satisfactory; (3) that he was subject to an adverse employment action; and (4) that the circumstances surrounding the adverse action give rise to an inference of discrimination. WBL does not contest the first and third elements: As a Haitian-American, Picault was a member of a protected class, and Picault was subject to adverse employment action because he was fired. (Dkt. No. 53 at 5.) But Picault has not satisfied prongs two and four.

First, Picault has not shown that his job performance was satisfactory. By his own admission, he did not meet WBL's requirement of closing $50,000 in loans per month. He also did not make the required 100 phone calls per day. (Dkt. No. 58 at ¶¶ 20, 37; Dkt. No. 66 at ¶ 20.) Picault received a written warning that he would be fired if he did not close $50,000 in loans within thirty days, but did not meet that number in the allotted time. (Dkt. No. 58 ¶¶ 36–37; Dkt. No. 66 ¶¶ 36–37.))

Second, and more importantly, Picault has not adduced any evidence showing that the circumstances surrounding his firing give rise to an inference of discrimination. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms, the employer's invidious

4

comments about others in the employee's protected group, the more favorable treatment of employees not in the protected group, or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Picault has not shown any of the above. The only evidence involving his national origin is that after a deal fell through, one of his managers, Kurtis Miller, said to Picault: "What is it, you using Haitian voodoo on these people?" The Second Circuit has held that "stray remarks, even if made by a decision-maker, do not constitute sufficient evidence to make out a case of employment discrimination" unless there are "other indicia of discrimination" such that a jury could conclude "that they bear a more ominous significance." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). In evaluating stray remarks, courts generally look to

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

Here, although Miller was Picault's supervisor at the time, Picault fails to allege any connection between this incident and his firing, and does not allege that Miller was involved in his firing. Nor has Picault adduced any evidence that the comment was intended to be hostile or hurtful (*see, e.g.*, Dkt. No. 60-4 at 165), or that Miller otherwise acted in a discriminatory way. And Picault points to no other indicia of national-origin discrimination besides Miller's stray remark. Nor has Picault shown that similarly situated non-Haitian-American employees were treated differently. While the Complaint asserts that Picault was treated differently than others,

5

he has not adduced evidence showing, for example, that non-Haitian-American employees with similar sales numbers kept their jobs.

In fact, Picault himself testified several times that WBL's adverse actions against him were motivated by factors other than his national origin. Specifically, Picault believes that WBL fired him so it could take away a potential client. (*See e.g.*, Dkt. No. 60-4 at 30 ("Q: "What about [the potential client] do you believe you were terminated over?" A: "They wanted to take it." Q: "And so that's why they fired you?" A: "Absolutely."); *see also* Dkt. No. 60-4 at 207–08.) But regardless of whether it is true that WBL fired Picault in part for that reason, Picault's claim fails in the absence of a connection to discrimination based on national origin.[1]

### C. Other Potential Claims

Given that this is a *pro se* action, the Court evaluates whether the facts adduced support any other potential claims, and concludes that they do not.

First, Picault has not adduced evidence supporting a potential retaliation claim. Specifically, there is no indication that Picault was engaged in any protected activity before his firing. Picault never complained to anyone at WBL that he was being treated differently based on his race or national origin. (*See* Dkt. No. 60-4 at 204 (Q: "So during your employment, did you ever complain to anyone that you were being treated differently based on your race or national origin?" A: "No.").) When he did complain about unfair treatment, he never mentioned any discrimination. Indeed, Picault testified at his deposition that he thinks Rodriguez's motive

---

[1] Moreover, even if Picault had satisfied his prima facie showing, WBL has set forth a legitimate, non-discriminatory reason for his termination, namely his failure to meet its sales goals and phone call minimums, and Picault has not provided sufficient evidence that those reasons were pretextual.

6

was that Rodriguez wanted to take credit for certain loans himself rather than give the credit to Picault. (*See e.g.*, Dkt. No. 60-4 at 207–08.)

Second, Picault has not adduced evidence to support a potential hostile-work-environment claim. For the same reasons as above, Miller's stray remark, without more, is insufficient. *See, e.g.*, *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 167 (E.D.N.Y. 2015).

Finally, any potential state discrimination or retaliation claims would fail for the same reasons as Picault's federal claims. Discrimination claims under the New York State Human Rights Law are governed by the same framework as Title VII. *See Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010). The same goes for hostile work environment claims. *See Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). Even under the New York City Human Rights Law, which is most solicitous to plaintiffs, *see, e.g.*, *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 529–30 (S.D.N.Y. 2015), Picault fails to connect his perceived unfair treatment to his national origin.

**IV.  Conclusion**

For the foregoing reasons, WBL's motion for summary judgment is GRANTED. The Clerk of Court is directed to close the motion at Docket Number 47 and to close this case.

SO ORDERED.

Dated: February 7, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTIES BY CHAMBERS*